## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**THANH VAN NGUYEN ET AL.**                                     **CIVIL ACTION**

**VERSUS**                                                                          **No. 13-2537**

**HUNG DO**                                                                       **SECTION I**

### ORDER AND REASONS

Before the Court is a motion[1] filed by defendant, Hung Do, to dismiss the complaint for

lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil

Procedure. Plaintiffs, Thanh Van Nguyen and Sang Phan, filed an amended complaint[2] and an

opposition,[3] and defendant filed a reply memorandum.[4] For the following reasons, the motion is

**GRANTED**.

### BACKGROUND

Plaintiffs initiated the above-captioned matter "under the General Maritime Law of the

United States and under Louisiana law,"[5] asserting a cause of action that allegedly arose out of a

physical altercation on May 18, 2012.[6] Plaintiffs, who are both commercial fishermen that "own

and operate shrimp boats,"[7] allege in their amended complaint that the incident has left each of

---

[1] R. Doc. No. 12.
[2] R. Doc. No. 15.
[3] R. Doc. No. 17.
[4] R. Doc. No. 21.
[5] R. Doc. No. 15, ¶ 14. The Court notes that plaintiffs' amended complaint asserts that the state law claim is brought "pursuant to, inter alia, Louisiana Code of Civil Procedure article 2314." R. Doc. No. 15, ¶ 14. However, no such article exists in the Louisiana Code of Civil Procedure.
[6] R. Doc. No. 15, ¶ 8.
[7] R. Doc. No. 15, ¶ 4; *see also* R. Doc. No. 17, at 6-7.

them "unable to work as a fisherman" because of the injuries they sustained during the alleged attack by defendant[8] that allegedly occurred aboard plaintiff Sang Phan's docked vessel.[9]

After defendant filed his motion, plaintiffs filed an amended complaint[10] pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure.[11] Plaintiffs also filed an opposition to the motion, arguing first that the motion to dismiss "is now moot because Plaintiffs filed an Amended Complaint."[12] Plaintiffs argue, in the alternative, that all requirements for admiralty jurisdiction have been met,[13] and they cite two cases in support of the proposition that "[c]ourts have found federal admiralty jurisdiction over intentional tort claims."[14] Plaintiffs conclude, "An attack by an invitee aboard the vessel clearly falls within the maritime jurisdiction of this court."[15]

Defendant filed a reply memorandum addressing both the original complaint and the amended complaint.[16] Defendant argues that plaintiffs' cases are distinguishable and that the amended complaint contains the same defects as the original complaint,[17] but he also describes inconsistencies between plaintiffs' amended complaint and the "Incident Report prepared by the Plaquemines Parish Sheriff's Office."[18]

---

[8] R. Doc. No. 15, ¶¶ 12, 13.
[9] R. Doc. No. 15, ¶¶ 6, 8-10.
[10] R. Doc. No. 15.
[11] *See* R. Doc. No. 17, at 1.
[12] R. Doc. No. 17, at 3.
[13] R. Doc. No. 17, at 4-7.
[14] R. Doc. No. 17, at 4 (citing *Gruver v. Lesman Fisheries Inc.*, 489 F.3d 978 (9th Cir. 2007); *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891 (11th Cir. 2004)).
[15] R. Doc. No. 17, at 7.
[16] R. Doc. No. 21.
[17] R. Doc. No. 21, at 4-6.
[18] R. Doc. No. 21, at 2.

## LAW AND ANALYSIS

### A.      Effect of Amended Complaint

As an initial matter, the Court must decide whether the motion to dismiss, which addresses the original complaint, was made moot by plaintiffs' filing of an amended complaint.[19] As stated in 6 Wright & Miller, Federal Practice & Procedure § 1476 (3d ed. 2013):

> Once an amended pleading is interposed, the original pleading no longer performs any function in the case . . . . This effect of an amended pleading under Rule 15(a) becomes particularly important when the amendment purports to cure a defective earlier pleading. . . . [However,] defendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading. To hold otherwise would be to exalt form over substance.

*See also Ohio River Valley Envtl. Coal., Inc. v. Timmermeyer*, 66 F. App'x 468, 472 n.4 (4th Cir. 2003) (citing 6 Wright & Miller, Federal Practice & Procedure § 1476); *Melson v. Vista World Inc. & Assocs.*, No. 12-135, 2012 WL 6002680, at *12 & nn.3-4 (E.D. La. Nov. 30, 2012) (Milazzo, J.) (collecting cases); *In re Vioxx Prods. Liability Litig.*, No. 08-1633, 2008 WL 4681368, at *10 n.11 (E.D. La. Oct. 21, 2008) (Fallon, J.) ("[T]he Court will not require the Defendant to file an additional motion simply as a matter of procedure.") (citing 6 Wright & Miller, Federal Practice & Procedure § 1476).

The Court finds that the motion to dismiss is not moot. Defendant addresses the amended complaint in his reply memorandum, and it is clear that defendant considers the amended complaint to share the same defects as the original complaint.[20] Accordingly, the Court will not "exalt form over substance" by requiring defendant to file a new motion. *See* 6 Wright & Miller, Federal Practice & Procedure § 1476.

---

[19] *See* R. Doc. No. 17, at 3.
[20] *See* R. Doc. No. 21.

B.      **Facial Versus Factual Challenge**

A motion to dismiss filed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure "allow[s] a party to challenge the subject matter jurisdiction of the district court to hear a case." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "At the outset [the Court] must emphasize a crucial distinction, often overlooked, between 12(b)(1) motions that attack the complaint on its face and 12(b)(1) motions that attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977); *see also* 5B Wright & Miller, Federal Practice and Procedure § 1350 (3d ed. 2013) ("As many judicial decisions make clear, a motion under Rule 12(b)(1) may be used to attack two different types of jurisdiction defects."). The U.S. Court of Appeals for the Fifth Circuit has explained:

> A motion to dismiss for lack of subject matter jurisdiction, Rule 12(b)(1), can be based on the lack of jurisdiction on the face of the complaint. If so, the plaintiff is left with safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised—the court must consider the allegations in the plaintiff's complaint as true. But the two motions are treated quite differently when matter outside the complaint is the basis of the attack.

*Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981) (citation omitted). The court further explained by quoting the U.S. Court of Appeals for the Third Circuit:

> The facial attack [on subject matter jurisdiction] does offer similar safeguards to the plaintiff: the court must consider the allegations of the complaint as true. The factual attack, however, differs greatly for here the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Id.* at 412-13 (quoting *Mortensen*, 549 F.2d at 891).

4

"The district court consequently has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* at 413.

Defendant clearly intended his original motion to be a facial attack,[21] and plaintiffs admitted as much in their opposition.[22] However, in his reply memorandum, defendant makes factual arguments based on the "the Incident Report prepared by the Plaquemines Parish Sheriff's Office,"[23] which, he argues, "bear[s] upon this Court's admiralty jurisdiction insofar as there are any allegations about [his] actions aboard a vessel, as opposed to a dock."[24] In the final section of his reply memorandum, defendant makes both facial arguments[25] and factual arguments.[26]

Although defendant does raise factual issues, it is clear that the primary basis for the attack is the argument that "[t]he present matter, *taking the plaintiffs' allegations as true*, is nothing more than a simple, state-law tort, and does not call for the special application of admiralty law or jurisdiction."[27] The Court does not find that any "matter outside the complaint is the *basis* of the attack," *Williamson*, 645 F.2d at 412 (emphasis added), and accordingly, the Court construes plaintiffs' motion as a facial attack and bases its order on "the complaint alone." *See id.* at 413.

---

[21] *See* R. Doc. No. 12-1, at 2.

[22] R. Doc. No. 17, at 3 ("The instant motion raises a facial attack.").

[23] R. Doc. No. 21, at 2.

[24] R. Doc. No. 21, at 4.

[25] R. Doc. No. 21, at 5 ("Even if the Court were to accept the plaintiffs' arguments . . . .").

[26] R. Doc. No. 21, at 6 ("There is nothing about having people over, as 'invitees', to drink beer after work or otherwise, that turns 'a tortfeasor's activity' into an 'activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand.'").

[27] R. Doc. No. 21, at 6 (emphasis added).

### C.     Admiralty Jurisdiction

It is well-settled that "a party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity." *Grubart*, 513 U.S. at 534; *see also Sisson v. Ruby*, 497 U.S. 358 (1990); *Foremost Ins. Co. v. Richardson*, 457 U.S. 668 (1982); *Exec. Jet Aviation, Inc. v. City of Cleveland, Ohio*, 409 U.S. 249 (1972).

The maritime location test requires that a plaintiff demonstrate that the tort occurred on navigable water or, if the injury was suffered on land, that it was it was caused by a vessel on navigable water. *Scarborough v. Clemco Indus.*, 391 F.3d 660, 663 (5th Cir. 2004) (citing *Grubart*, 513 U.S. at 534-35). Defendant assumes "[f]or the sake of argument only . . . that the wrong alleged occurred on or over navigable waters" and that the "location" test would, therefore, be satisfied.[28]

The maritime connection test has two requirements. "A court, first, must 'assess the general features of the type of incident involved,' to determine whether the incident has 'a potentially disruptive impact on maritime commerce.'" *Grubart*, 513 U.S. at 534 (citation omitted). "Second, a court must determine whether 'the general character' of the 'activity giving rise to the incident' shows a 'substantial relationship to traditional maritime activity.'" *Id.* (quoting *Sisson*, 497 U.S. at 365, 364 & n.2). "[A]s long as one of the putative tortfeasors was engaged in traditional maritime activity the allegedly wrongful activity will 'involve' such traditional maritime activity and will meet the second nexus prong." *Id.* at 541. The analysis must be conducted based on a "description of the incident at an intermediate level of possible generality." *Id.* at 538.

---

[28] R. Doc. No. 12-1, at 2.

Even if the location test and the first prong of the connection test were satisfied—a finding this Court does not make—the amended complaint does not contain adequate allegations to satisfy the second prong of the connection test. Despite plaintiffs' assertion that "[f]ights aboard vessels have been occurring for thousands of years," plaintiffs have not cited any cases supporting the proposition that "[a]n attack by an invitee aboard the vessel clearly falls within the maritime jurisdiction of this court."[29] Although plaintiffs contend that "the general incidents giving rise to the incident show a substantial relationship to traditional maritime activity,"[30] plaintiffs have not alleged anything regarding "'the general character' of the 'activity [i.e., defendant's presence aboard the vessel] giving rise to the incident [i.e., the alleged attack].'" *Grubart,* 513 U.S. at 534.

Plaintiffs would have this Court conclude that "general incidents" that occur when fishermen "are not actually actively engaged in shrimping"—such as "repairing and maintaining their vessels," "often eat[ing] and sleep[ing] aboard their vessels," and "from time to time hav[ing] invitees aboard their vessel"—"are attendant to the overall operation of the vessel and their work as shrimpers"[31] and, therefore, show that the activity giving rise to the alleged attack has a "substantial relationship to traditional maritime activity." *See id.* at 541. But plaintiffs incorrectly focus on their own activities. The U.S. Supreme Court has stated that the relevant inquiry is whether the "tortfeasor[] was engaged in traditional maritime activity," not the tort victim. *Id.* at 541. The arguments that plaintiffs make regarding their activities outside of working hours do nothing to demonstrate that defendant's activities had any maritime character.

---

[29] R. Doc. No. 17, at 7.
[30] R. Doc. No. 17, at 6.
[31] R. Doc. No. 17, at 6-7.

Without any other allegations, the Court cannot conclude that mere presence aboard a vessel subjects individuals to federal admiralty jurisdiction for any torts that might be committed. Such a ruling would extend federal admiralty jurisdiction beyond the limits set by the U.S. Supreme Court, which has directed courts to "ask whether *a tortfeasor's activity*, commercial or noncommercial, on navigable waters is *so closely related* to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand." *Id.* at 539-40 (emphasis added). According to the amended complaint, the tortfeasor's activity was "board[ing] the vessel and viciously attack[ing]" plaintiffs.[32] On its own, this allegation does not show that defendant's visit to the vessel bore a "substantial relationship to traditional maritime activity." *See id.* at 541.

The cases that plaintiffs cite in support of their position are distinguishable. In *Gruver*, the U.S. Court of Appeals for the Ninth Circuit found that "a fight aboard a ship between a seaman and his former maritime employer over unpaid wages can give rise to federal admiralty jurisdiction." 489 F.3d at 980. Regarding the second prong of the connection test, *Gruver* states: "Given the Supreme Court's mandate to characterize the relevant activity generally, but not so generally as to ignore the maritime context, the relevant activity giving rise to the assault in this case is a failure to pay wages for maritime services performed aboard a commercial vessel. It is clear that paying seamen for their work at sea has a substantial relationship to traditional maritime activities." *Id.* at 986.

It was crucial to *Gruver*'s analysis that the motivation behind the attack was "a failure to pay wages for maritime services performed aboard a commercial vessel." *Id.* at 986. By contrast, in plaintiffs' amended complaint, plaintiffs have not alleged any reason as to why defendant may

---

[32] R. Doc. No. 15, ¶ 8.

8

have attacked them nor given any explanation of why he was aboard their vessel.[33] Unlike the assailant in *Gruver*, who attacked his former employer because he had not been paid for the maritime work that he had performed, *id.* at 986, the most that could be said regarding defendant is that he is a fisherman who allegedly attacked and injured two other fishermen while aboard a vessel docked in a navigable waterway.[34] If the activity giving rise to the alleged attack in this case bears a "substantial relationship to traditional maritime activity," see *Grubart*, 513 U.S. at 541, there would be no principled reason for refusing to hold that any activity in which fishermen engage on any vessel takes on a maritime character if the activity gives rise to a tort. Without any allegations about the nature of the activity giving rise to the attack, the Court cannot find that such activity was maritime in nature.[35]

Likewise, *Doe* is also distinguishable. In *Doe*, a crew member of a cruise ship committed sexual battery against a passenger while the ship was at port. 394 F.3d at 899-900. Regarding the second prong of the connection test, the U.S. Court of Appeals for the Eleventh Circuit found that "the character of the activity here is the interaction between crew members and passengers during an ongoing cruise, which clearly bears a 'substantial relationship to traditional maritime activity.'" *Id.* at 900. Conversely, the vessel on which plaintiffs allege they were attacked was not on a voyage but docked, and the relationship between plaintiffs and defendant is not described.[36]

In sum, although the Court assumes without deciding that the location test and the first prong of the connection test are satisfied by the amended complaint, plaintiffs have not made

---

[33] *See* R. Doc. No. 15.

[34] R. Doc. No. 15, ¶¶ 5-10.

[35] The Court notes that plaintiffs had notice of the alleged jurisdictional defects in the complaint and still failed to make adequate allegations with respect to the second prong of the connection test, as the amended complaint was filed *after* defendant's motion to dismiss.

[36] *See* R. Doc. No. 15, ¶¶ 5-10.

sufficient allegations regarding the second prong of the connection test. Plaintiffs are required to allege that "'the general character' of the 'activity [i.e., defendant's presence aboard the vessel] giving rise to the incident [i.e., the alleged attack]' shows a 'substantial relationship to traditional maritime activity.'" *Grubart*, 513 U.S. at 534. Plaintiffs argue that an attack by one fisherman against another on a vessel docked in navigable waters "clearly falls within the maritime jurisdiction of this court,"[37] but they have cited no authority to support their contention. The Supreme Court requires them to allege that the "tortfeasor's activity . . . on navigable waters is so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand." *Grubart*, 513 U.S. at 539-40. Finding such a relationship in this case would be tantamount to "a purely mechanical application of the locality test," *Exec. Jet*, 409 U.S. at 261.

### D.     State-Law Claims

Having determined that plaintiffs' federal claims must be dismissed, the Court declines to exercise supplemental jurisdiction over their remaining state law claims. *See* 28 U.S.C. § 1367(c)(3) ("The district court may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."). "When a court dismisses all federal claims before trial, the general rule is to dismiss any [supplemental] claims." *Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir. 1999). "[W]hen the single federal-law claim is eliminated at an 'early stage' of the litigation, the district court has 'a powerful reason to choose not to continue to exercise jurisdiction.'" *Parker & Parsley Petrol. Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988)). "[A] federal court should consider and weigh in each case,

---

[37] R. Doc. No. 17, at 7.

and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Carnegie-Mellon*, 484 U.S. at 350. Balancing considerations of judicial economy, convenience, fairness to litigants, and comity, the Court declines to exercise supplemental jurisdiction over plaintiffs' remaining state law claim(s).

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the motion is **GRANTED**.

**IT IS FURTHER ORDERED** that all claims in the above-captioned matter are hereby **DISMISSED WITHOUT PREJUDICE**.

New Orleans, Louisiana, December 16, 2013.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**